OPINION
{¶ 1} The Cincinnati Insurance Company ("appellant") appeals the May 24, 2001, judgment entry of the Lake County Court of Common Pleas, granting appellee William Smith's cross motion for summary judgment. In granting appellee's summary judgment motion, the trial court held that the appellant's commercial general liability insurance policy satisfied the definition of an "automobile/motor vehicle liability policy of insurance" as defined in R.C. 3937.18(L). As a result, appellant was required to offer uninsured/underinsured motorists coverage to appellee as required by R.C. 3937.18(A). For the following reasons, we reverse the decision of the trial court in this matter.
 {¶ 2} On May 4, 1999, appellee William Smith was involved in an auto accident allegedly caused by the negligence of the other driver, Katherine Gibson ("Gibson"). As a result of the May 4, 1999, accident, William Smith allegedly suffered various injuries, including a broken hip and a broken shoulder. At the time of the accident, William Smith was a named insured under a Metalworkers Package Policy[1] issued by appellant Cincinnati Insurance Company. Gibson was insured by State Farm Mutual Insurance Company. The total amount of Gibson's automobile liability coverage under the State Farm policy at the time of the accident was $100,000 per accident. Both parties in the instant case stipulated to the following sequence of events. On October 25, 1999, counsel for appellee corresponded with appellant requesting written consent from appellant for appellee to settle with Gibson because State Farm had tendered Gibson's liability limit of $100,000.
 {¶ 3} On November 22, 1999, appellant responded to appellee's counsel and explained that the Metalworkers Package Policy did not qualify as an automobile liability or motor vehicle liability policy as defined by R.C. 3937.18(L). CIC claimed that since the policy did not qualify as an automobile/motor vehicle policy, CIC was not required to offer uninsured/underinsured motorist coverage to the appellee. Appellee then settled his claim with Gibson and State Farm. Upon settling his claim with Gibson and State Farm, appellee then filed the instant declaratory judgment action regarding the underinsured motorist claim under the general liability portion of the Metalworkers Package Policy issued by appellant. Appellant then filed a counterclaim, also seeking similar relief via a declaratory judgment action. Both parties filed summary judgment motions, and on May 24, 2001, the trial court granted appellee's motion for summary judgment. As a result, appellant was required to offer uninsured/underinsured motorist coverage under the general liability portion of appellee's policy pursuant to R.C.3937.18(A).[2] This timely appeal followed. Appellant asserts a sole assignment of error for our review:
 {¶ 4} "[1.] The trial court erred in denying appellant's motion for summary judgment and in granting appellees' motion for summary judgment."
 {¶ 5} On appeal, a reviewing court conducts a de novo review of a trial court's summary judgment entry. Grafton v. Ohio Edison Co.,77 Ohio St.3d 102, 1996-Ohio-336. A de novo review requires an independent review of the trial court's decision without any deference to it. Brown v. Scioto Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711. Summary judgment is a procedural device designed to avoid a formal trial when there is nothing left to litigate. Norris v. Ohio Std. Oil Co.
(1982), 70 Ohio St.2d 1. Civ.R. 56(C) provides that summary judgment is proper when (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence, viewing the evidence most strongly in favor of the nonmoving party, that reasonable minds can come to but one conclusion, which is adverse to the non-moving party. SeeZivich v. Mentor Soccer Club, Inc., 82 Ohio St.3d 367, 1998-Ohio-389.
 {¶ 6} Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine issue" exists to be litigated for trial. State ex rel. Zimmerman v.Tompkins, 75 Ohio St.3d 447, 1996-Ohio-211.
 {¶ 7} Attached to appellant's motion for summary judgment filed on August 23, 2000, is a copy of the police report concerning the events from which this action arose. This report clearly indicates that, at the time of the accident, appellee was driving a Ford F-150, which he owned. Due to the fact that appellee owned the automobile in question, appellee was excluded from the coverage under the instant policy, which applied only to hired and non-owned vehicles.
 {¶ 8} Based on the above, we find that reasonable minds can come to but one conclusion in this case, appellee's vehicle was not covered by the general liability policy at issue.
 {¶ 9} Before proceeding further, this court is compelled to note that uninsured/underinsured motorist law in Ohio has been fraught with change in recent years, and as a result, the context in which courts must examine these cases continues to change as well. For that reason, we find it necessary to briefly examine the legislative and judicial history surrounding the law at issue in the case before us.
 {¶ 10} Prior to September 3, 1997, R.C. 3937.18 did not define "automobile/motor vehicle liability insurance" as contained in subsection (A) of the statute. As a result, the Supreme Court of Ohio was forced to interpret several important auto insurance cases without the assistance of a statutory definition. In the instant case, both parties attempt to cite to those cases in support of their arguments. See, Davidson v.Motorist Mut. Ins. Co. (2001), 91 Ohio St.3d 262; Selander v. ErieIns.Group (1999), 85 Ohio St.3d 541. For the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties. Rossv. Farmers Ins. Group of Cos. (1998), 82 Ohio St.3d 281. As the Supreme Court of Ohio correctly noted in both Davidson and Selander, supra, those cases interpreted a previous version of R.C. 3937.18 that did not include the R.C. 3937.18(L) definition of an "automobile liability or motor vehicle liability policy of insurance." As a result, we find the holdings of those cases inapplicable to the interpretation of R.C. 3937.18(L) as amended by House Bill 261 on September 3, 1997. Therefore, we are of the opinion that our analysis is restricted to a determination of whether the general liability policy is a motor vehicle liability policy within the meaning of the statutory definition.
 {¶ 11} The record before us indicates that the policy issued by appellant to appellee became effective on January 14, 1999, and expired on January 14, 2002. Therefore, under Ross, this court must review appellee's claim in the context of R.C. 3937.18(L) as it existed on January 14, 1999, the date on which the policy between appellant and appellee became effective.
 {¶ 12} R.C. 3937.18(L) stated in pertinent part: "As used in this section, "automobile liability or motor vehicle liability policy of insurance" means either of the following:
 {¶ 13} "[1.] Any policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility as defined by division (K) of Section 4509.01 of the Revised Code, for owners or operators of the motor vehicles specifically identified in the policy of insurance.
 {¶ 14} "[2.] Any umbrella liability policy of insurance."
 {¶ 15} R.C. 4509.01(K) states in pertinent part: " "Proof of financial responsibility" means proof of ability to respond in damages for liability, on account of accidents ***, arising out of the ownership, maintenance, or use of a motor vehicle ***."
 {¶ 16} Appellee's ownership of the vehicle also is dispositive as to the issue of whether the Metalworkers Package Policy qualified as an automobile liability or motor vehicle liability policy for purposes of uninsured/underinsured motorist coverage.
 {¶ 17} Endorsement number GA 207 03 92, made to policy number MPP 450 05 45, issued by appellant states as follows:
 {¶ 18} "HIRED AUTO LIABILITY
 {¶ 19} "The insurance provided under Coverage A (Section I), applies to "bodily injury" or "property damage" arising out of the maintenance or use of a "hired auto" by you or your employees in the course of your business.
 {¶ 20} "*** NON-OWNED AUTO LIABILITY
 {¶ 21} " The insurance provided under Coverage A (Section I) applies to "bodily injury" or "property damage" arising out of the use of any "non-owned" auto in your business by any person other than you."
 {¶ 22} Page two of endorsement number GA 207 03 92 defines hired and non-owned autos as follows:
 {¶ 23} "*** "Hired auto" means any "auto" you lease, hire, or borrow. This does not include any "auto" you lease, hire or borrow from any of your employees, or members of their households, or from any partner or executive officer of yours.
 {¶ 24} ""Non-owned auto" means any "auto" you do not own, lease, hire, or borrow which is used in connection with your business."
 {¶ 25} In this case, only "hired" or "non-owned" vehicles are included within the scope of coverage under the policy at issue. As such, appellee's "owned" vehicle is excluded from coverage under the policy. Exclusion is the opposite of the concept of inclusion. It is incongruous to say that the exclusion of an "owned" motor vehicle somehow triggers a finding that this is a motor vehicle policy that identifies only hired and non-owned motor vehicles and thus requires the inclusion of uninsured/underinsured coverage. In reaching this decision, we pass no judgment as to whether specific identification of hired or non-owned vehicles is a prerequisite of coverage, since that issue is not before us.
 {¶ 26} Based on the above, reasonable minds can come to but one conclusion in this case, appellant's liability portion of the policy, under the circumstances, does not satisfy the requirements of R.C. 3937.18.
 {¶ 27} For the foregoing reasons, we find that the trial court erred in granting appellee's motion for summary judgment while overruling the motion filed by appellant. We find appellant's sole assignment of error well taken and the May 24, 2001, decision of the Lake County Court of Common Pleas is hereby reversed and judgment is entered for appellant.
JUDITH A. CHRISTLEY, J., concurs.
DONALD R. FORD, J., concurs with concurring opinion.
[1] The Metalworkers Package Policy issued by CIC consisted of three components. At issue in this case is the "hired/non-owned auto" General Liability component of the Metalworkers Package Policy.
[2] R.C. 3937.18(A) governs the mandatory offerings of uninsured/underinsured motorist coverage by issuers of automobile/motor vehicle liability insurance in Ohio. In adding R.C. 3937.18(L) via House Bill 261, the Ohio legislature provided an actual definition of "automobile/motor vehicle liability policy of insurance." The definition contained in R.C. 3937.18(L) now serves as the focus of our review.